UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: VCW ENTERPRISES, INC., d/b/a : | |
| M&W PRECAST, f/k/a MODERN : | Chapter 11 |
| PRECAST CONCRETE, INC., : | Case No. 12-21304REF |
|      Debtor : | |
| ------------------------------------------------- | |
| VCW ENTERPRISES, INC., d/b/a M&W : | Adv. No. 13-0224 |
| PRECAST, f/k/a MODERN PRECAST : | |
| CONCRETE, INC., : | |
|      Plaintiff : | |
| v. : | |
| UNITED CONCRETE PRODUCTS, : | |
|      Defendant : | |

# OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This case is before me on the Motion for Summary Judgment (the "Motion") filed by Plaintiff/Debtor, VCW Enterprises, Inc.,[1] in this adversary proceeding. On April 24, 2013, Plaintiff filed its complaint against Defendant, United Concrete Products, to avoid, under 11 U.S.C. §547(b), allegedly preferential transfers arising from a pre-petition joint check agreement among

---

[1] Plainitff/Debtor had initiated this case when it filed its Chapter 11 petition on December 6, 2012.

Plaintiff, Defendant, and Kinsley Construction, Inc. ("Kinsley").[2] The complaint also seeks to avoid, based on 11 U.S.C. §§547(b) and 549(a), three payments received by Defendant under the joint check agreement.[3] On July 16, 2013, I denied Defendant's motion to dismiss the complaint and Defendant filed its answer on August 5, 2013. Plaintiff filed this Motion on November 20, 2013. All briefs have now been filed, and the matter is ready for disposition. For the reasons that follow, I find that genuine issues of material fact exist and I will deny the Motion.

---

[2]  The complaint initially contained six counts and named Kinsley as an additional defendant. Count III of the complaint, which sought relief only against Kinsley, was dismissed, however, by my bench Order entered on June 3, 2013, which was ratified and affirmed by my written Order entered on that same date. Kinsley is therefore no longer a defendant in this proceeding.

[3]  The complaint also seeks turnover of these payments as property of the estate under 11 U.S.C. §542(a), recovery of any avoided transfers under 11 U.S.C. §550(a), and disallowance of any claim that Defendant may have against the bankruptcy estate under 11 U.S.C. §502(d) and (j).

## II. BACKGROUND

This dispute arises out of a construction project known as the Chester County Solid Waste Authority – Lanchester Area E Stage 1B ("the project"). The project was bonded through the Chester County Solid Waste Authority. Kinsley was general contractor on the project. Plaintiff, a manufacturer and supplier of precast concrete structures, pipes and related products, was a subcontractor on the project. Defendant supplied Plaintiff with concrete products that Plaintiff then used on the project. Defendant invoiced Plaintiff for the products it shipped to Plaintiff, but Plaintiff filed to pay Defendant for any of the products it purchased.

Between October 11, 2012 and October 25, 2012, Defendant sent Plaintiff several e-mails inquiring about the overdue payments, including asking Plaintiff if the project was bonded. Between October 25, 2012 and October 31, 2012, further e-mails were exchanged among Plaintiff, Defendant, and Kinsley about the parties possibly entering into a joint check agreement to ensure Defendant that it would be paid for the outstanding balance owed to it by Plaintiff. As of October 31, 2012, Plaintiff was overdue in its payment obligations to Defendant in the amount of $95,409.70.

Between November 5, 2012 and November 10, 2012, a joint check agreement ("the joint check agreement") was negotiated and executed by Plaintiff, Defendant, and Kinsley. The joint check agreement is dated as of October 31,

2012. On November 12, 2012, Defendant made a claim on the payment bond. On November 13, 2012, additional e-mails were exchanged between Plaintiff and Defendant that addressed Defendant's concerns that sufficient payments would be made by Kinsley under the joint check agreement to satisfy the total indebtedness owed by Plaintiff to Defendant. On December 12, 2012, Greg Chase, a Vice President of Plaintiff, wrote an e-mail to Defendant's President, Jon Gavin, giving Mr. Gavin permission to sign a joint check on behalf of Plaintiff.

Three checks, payable to both Plaintiff and Defendant, were issued by Kinsley under the joint check agreement. The first check, in the amount of $6,827.58, was dated November 16, 2012; Defendant received it on November 26, 2012. The second check, in the amount of $63,996.49, was dated December 11, 2012; Defendant received it on December 12, 2012. The third check, in the amount of $24,583.63, was dated December 28, 2012; and Defendant received it on December 31, 2012. The three checks total $95,409.70, which was the amount of pre-petition indebtedness owed by Plaintiff to Defendant. Kinsley wrote the checks on its checking account at M&T Bank and made them jointly payable to both Plaintiff and Defendant. Defendant deposited the checks into its account at First Niagara Bank.

Defendant received and deposited the $6,827.58 check dated November 16, 2012, before Plaintiff filed its Chapter 11 petition on December 6, 2012.[4] Plaintiff wrote and M&T honored the second and third checks, totaling $88,582.12 and dated December 11, 2012 and December 28, 2012, respectively, after Plaintiff filed its Chapter 11 petition. Plaintiff now seeks summary judgment to avoid the joint check agreement and avoid and recover the transfers made thereunder pursuant to 11 U.S.C. §§547(b), 549(a), 542 and 550.

---

[4]  Plaintiff states in its brief that it presumes that this check cleared before December 6, 2012, which is the date Plaintiff filed its Chapter 11 petition. Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, filed November 20, 2013, docket entry 38, at p. 9, ¶12. Defendant does not take issue with this presumption. I will therefore also presume, for purposes of this Motion, that the $6,827.58 check cleared Plaintiff's bank prior to the date Plaintiff filed this Chapter 11 petition. See Waslow v. Dover Findings, Inc. (In re M Group, Inc.), 319 B.R. 795, 797 (Bankr. D.Del. 2005)("for preference purposes, the date the drawee bank honors a check is the date the transfer is deemed to have been made") citing Barnhill v. Johnson, 503 U.S. 393, 394-95 (1992).

# III. DISCUSSION

## A. Summary Judgment Standard

Rule 56(a), made applicable to adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7056, provides, in relevant part, that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Finkel v. Polichuk (In re Polichuk), Adv. No. 10-031, Bankr. No. 08-10783ELF, 2014 WL 766648, at *6 (Bankr. E.D. Pa. Feb. 27, 2014). "[T]he court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial." Id. citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The burden is on the party moving for summary judgment to show no genuine issue of material fact. Celotex Corp v. Catrett, 477 U.S. 317, 325 (1986).

As aptly recognized by my colleague, Chief Judge Eric L. Frank, "[p]roper resolution of a motion for summary judgment also requires consideration of the parties' respective burdens." Polichuk, 2014 WL 766648 at *6.

As a threshold matter, the moving party's initial burden is to demonstrate that there are no disputed issues of material fact. E.g., U.S. v. Donovan, 661 F.3d 174, 185 (3d Cir.2011); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir.1996); Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.1987). How the movant meets this burden and how the respondent may rebut the movant's showing is affected by the allocation of the evidentiary burden of persuasion if the dispute were to proceed to trial.

If the moving party bears the burden of proof, the movant must "support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." Fitzpatrick, 2 F.3d at 1115 (citation omitted). The evidence must establish "all the essential elements of its case on which it bears the burden of proof at trial, [such that] no reasonable jury could find for the non-moving party." Id. (citation omitted); see also Bath, 442 B.R. at 387. If the movant (with the burden of proof at trial) meets this initial burden, the responding party may not rest on the pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson, 477 U.S. at 247–50.

First, and most simply, if the movant (who does not bear the burden of proof) presents evidence establishing that the undisputed facts negate at least one (1) element of the respondent's claim, the movant is entitled to summary judgment. See Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 868 F.Supp. 1278, 1287 n. 5 (D. Utah 1994).

Alternatively, the movant may obtain summary judgment by demonstrating that the responding party (with the burden of proof at trial) lacks evidence to support an essential element of its claim. See, e.g., Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir.1996); Chipollini, 814 F.2d at 896. How the movant meets the summary judgment burden of demonstrating the absence of evidentiary matter supporting the position of the party with the burden of proof is debated by the parties in this case ... However, putting aside for the moment how the movant goes about establishing that the nonmovant lacks essential evidence, if the movant does so, the

> movant is entitled to summary judgment. See Celotex, 477 U.S. at 322 ("[Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); see also In re Roemmele, 2011 WL 4804833, at *4 (Bankr. E.D. Pa. Oct. 11, 2011). (footnote omitted).

Polichuk, 2014 WL 766648 at *7. As Judge Frank elaborated in footnote 14 of his Polichuk opinion, "it is not possible for the movant to succeed in this alternative path to summary judgment if the responding party contests the motion by presenting some evidence in support each element of its claim." Id.

## B. **Plaintiff Is Not Entitled to Summary Judgment on Count I of Its Complaint, Which Seeks To Avoid the Joint Check Agreement and the Transfers Made Thereunder as Preferential Transfers Under 11 U.S.C. §547(b).**

### (1). Genuine issues of material fact exist regarding whether the transfers at issue enabled Defendant to receive more than it would have received if this case were a Chapter 7 liquidation proceeding and the transfers had not been made. 11 U.S.C. §547(b)(5).

Section 547(b) of the Bankruptcy Code grants the bankruptcy trustee or the debtor-in-possession in a Chapter 11 proceeding the power to avoid, for the benefit of the bankruptcy estate, preferential transfers. The plaintiff bears the

burden of proving each of the five elements necessary to state a claim under Section 547(b). 11 U.S.C. § 547(g); Guiliano v. RPG Mgt., Inc. (In re NWL Holdings, Inc.), Adv. No. 10-53535(MFW), Case No. 08-12847(MFW), 2013 WL 2436667, at *2 (Bankr. D. Del. June 4, 2013). These five elements are that the transfer was:

> (1) [T]o or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. §547(b).

Defendant first argues that the Motion must be denied because Plaintiff has not met its burden of showing that the transfers in issue were for the benefit of Defendant. 11 U.S.C. §547(b)(1). I disagree. To the contrary, viewing all of the evidence in the light most favorable to Defendant, I have no doubt that the joint check agreement and the payments made thereunder benefitted Defendant because they enabled Defendant to collect on the outstanding indebtedness it was

owed by Plaintiff. Because Plaintiff met its initial burden on this element, it was up to Defendant to designate specific factual averments, through the use of affidavits or other permissible evidentiary material, that show a genuine issue of material fact on this issue. Polichuk, 2014 WL 766648 at *7. Defendant failed to meet this burden because Defendant failed to provide me with any factual averments that show the transfers did not provide it with a benefit.

Plaintiff met its burden of showing that no genuine issue of material fact exists on the first element of Section 547(b) – i.e., that the transfers benefitted Defendant, 11 U.S.C. §547(b)(1). But Plaintiff must show that no genuine issue of material facts exists on each of the remaining elements of Section 547(b) to be entitled to summary judgment on Count I of its complaint. Defendant next argues that the Motion must be denied on Count I because genuine issues of material fact exist regarding the fifth element of Section 547(b) – i.e. whether the transfers enabled Defendant to receive more than it would have received if this case were a Chapter 7 liquidation proceeding and the transfers had not been made. 11 U.S.C. §547(b)(5). Specifically, Defendant maintains that had the transfers not been made, it would have recovered the amounts it was owed by making a claim on the payment bond or by filing a mechanics' lien. As a result, Defendant argues, the transfers did not enable it to receive more than it would have received if this case were a Chapter 7 liquidation proceeding and the transfers had not been made.

The law on this issue is unsettled. Some courts hold that a transferee's ability to make a claim on a payment bond or file a mechanics' lien prevents the transfer from being avoided as a preference because the availability of this alternative form of recovery negates the plaintiff's ability to prove that the transferee recovered more than it would have received in a Chapter 7 liquidation, see Bryant v. JCOR Mech., Inc. (In re The Electron Corp.), 336 B.R. 809, 812-13 (B.A.P. 10th Cir. 2006); Official Committee of Unsecured Creditors v. AAF-McQuay, Inc. (In re 360Networks (USA), Inc.), 327 B.R. 187, 193 (Bankr. S.D.N.Y. 2005); Cunningham v. T&R Demolition, Inc. (In re ML & Assoc., Inc.), 301 B.R. 195, 202-03 (Bankr. N.D. Tex. 2003).

Plaintiff argues, however, that the reasoning of these courts is flawed because the relevant inquiry is not whether the transferee may have recovered its indebtedness from any source whatsoever. Instead, Plaintiff advances decisions in which the inquiry focused on whether the transferee would have recovered its indebtedness *from the debtor's estate* in a Chapter 7 liquidation. See generally Lowe v. Palmetco, Inc. (In re N.A. Flash Foundation, Inc.), 298 Fed. Appx. 355, 359 (5th Cir. 2008); Smith v. Creative Fin. Mgmt., Inc. (In re Virginia-Carolina Fin. Corp.), 954 F.2d 193, 199 (4th Cir. 1992); The Liquidation Committee v. Binsky & Snyder, Inc. (In re J.A. Jones, Inc.), 361 B.R. 94, 101 (Bankr. W.D.N.C.

2007); Buchwald Capital Advisors LLC v. Metl-Span, I., Ltd (In re Pameco Corp.), 356 B.R. 327, 336-37 (Bankr. S.D.N.Y. 2006).

It would be premature for me to resolve this question of law at this stage of the proceeding. Defendant has introduced sufficient factual averments, through the use of the Gavin Affidavit, to show that it made a claim on the payment bond. This satisfies Defendant's evidentiary burden to demonstrate the existence of a genuine issue of material fact to be resolved at trial. Polichuck, 2014 WL 766648 at *7. Whether Defendant followed all procedures necessary to actually recover on the bond remains to be seen. I require a more fully developed factual record, and more detailed briefing from the parties on the legal issue, to enable me to resolve the factual and legal issues presented.[5] As Defendant has designated sufficient factual averments to demonstrate the existence of genuine issues of material fact regarding the fifth element of Section 547(b)(5), -- i.e., whether the transfers enabled Defendant to receive more than it would have

---

[5] I would also look for more detailed briefing by the parties on the issue of when a mechanics' lien is created, as opposed to perfected, under Pennsylvania law. Plaintiff cites Lewis v. Custom Heating Co. (In re Joseph M. Eaton Builders, Inc.), 84 B.R. 56, 58 (Bankr. W.D. Pa. 1988), for the proposition that "the mere right to file a mechanic's lien does not create such a lien in Pennsylvania." My initial research, however, leads me to question whether this statement is accurate. See Matter of Hempfield Homes, Inc., 174 F. Supp. 395, 397 (E.D. Pa. 1959)(a mechanics' lien arises under Pennsylvania law immediately upon the furnishing of the material, but this lien is inchoate until perfected by taking the steps outlined in the Pennsylvania mechanics' lien statute).

received if this case was a Chapter 7 liquidation proceeding and the transfers had not been made, I will deny the Motion relating to Count I of its complaint.[6]

## (2). Genuine issues of material fact exist regarding whether the transfers were made in the ordinary course of business. 11 U.S.C. §547(c)(2).

Defendant next argues that, even if Plaintiff met its burden of proving each of the essential elements of a Section 547(b) preferential transfer cause of action, Plaintiff's Motion should not be granted because genuine issues of material fact exist regarding whether the transfers were made in the ordinary course of business. Section 547(c)(2) of the Bankruptcy Code provides that a transfer made in the ordinary course of business cannot be avoided by a plaintiff as a preferential transfer under Section 547(b). 11 U.S.C. §547(c)(2). When a plaintiff establishes that a transfer constitutes a preference under Section 547(b), the burden shifts to the creditor to prove that the transfer falls within the ordinary course of business exception outlined in Section 547(c)(2). PN Chapter 11 Estate Liquidating Trust v. Inserts East, Inc. (In re Philadelphia Newspapers, LLC.), 468 B.R. 712, 721 (Bankr. E.D. Pa. 2012). Section 547(c)(2) states:

---

[6] Plaintiff's reliance on Dal-Tile Corp. v. Reitmeyer (In re Buono), 119 B.R. 498 (Bankr. W.D. Pa 1990) is misplaced. Although Buono questioned if a three-party joint check agreement is avoidable as a preferential transfer under Section 547(b), the principal issue was whether the transferred funds constituted property of the estate. The Buono court did not analyze the issues in the case now before me, which are: (1) Whether a creditor's ability to have recovered on a payment bond or mechanic's lien means that the creditor did not receive more than it would have received in a Chapter 7 liquidation, 11 U.S.C. §547(b)(5); and (2) whether the transfers in this case were made in the ordinary course of business, 11 U.S.C. §547(c)(2).

>  (c) The Trustee may not avoid under this section a transfer --
>
>  . . .
>
>  (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>
>  (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
>  (B) made according to ordinary business terms.

11 U.S.C. §547(c)(2).

Prior to the enactment of the Bankruptcy Abuse and Prevention and Consumer Protection Act ("BAPCPA") in 2005, a creditor was required to prove that a transfer was conducted both (i) in the ordinary course of business between the debtor and the transferee and (ii) according to ordinary business terms in the industry for the transfer to be protected from avoidance as having been made in the ordinary course of business under Section 547(c)(2). After BAPCPA, the creditor need only prove either that the transfer was in the ordinary course of business between the debtor and the transferee, 11 U.S.C. §547(c)(2)(A), or that it was made according to ordinary business terms in the industry. 11 U.S.C. §547(c)(2)(B). Liebersohn v. WTAE-TV (In re Pure Weight Loss, Inc.), 446 B.R. 197, 204 (Bankr. E.D. Pa. 2009). Subsection (A) is a subjective test that is determined by whether the transaction was done in the ordinary course between the two parties, while subsection (B) is an objective test that is determined by whether

the transaction is ordinary for the industry. NWL Holdings, 2013 WL 2436667 at *7.

Turning first to the subjective test in Section 547(c)(2)(A), the following factors are relevant to the question whether the transfers were within the ordinary course of business between Plaintiff and Defendant: (1) The length of time the parties had engaged in the type of dealing at issue; (2) whether the transfer was in an amount more than usually paid; (3) whether the payments were tendered in a manner different from prior payments; (4) whether any unusual action was taken by either party to collect or pay the debt; and (5) whether the creditor did anything to gain an advantage (such as taking additional security) in light of the debtor's deteriorating financial condition. Pure Weight Loss, 446 B.R. at 205.

It is undisputed that Plaintiff and Defendant had no prior business dealings with each other. This does not prevent the transfers from being considered within the ordinary course of business between the parties under Section 547(c)(2)(A). "As one court explained, a business relationship lacking evidence of any pre-preference period history 'is not per se ineligible for protection from avoidance under section 547(c)(2).'" Goldstein v. Starnet Capital Grp., LLC (In re Universal Marketing, Inc.), 481 B.R. 318, 328 n.9 (Bankr. E.D. Pa. 2012) citing Quad Sys. Corp. v. H&R Ind. Inc. (In re Quad Sys. Corp.), Adv. No. 02-0972, Case No. 00-35667F, 2003 WL 25947345, at *6 (Bankr. E.D. Pa. July 15, 2003).

"[E]ven if the defendant had no pre-preference period dealings with the debtor—and accordingly cannot establish a 'baseline of dealings'—the transfers may still be excepted from avoidance if the defendant can otherwise establish that they were made in the ordinary course of the parties' business dealings." Quad Sys. Corp., 2003 WL 25947345 at *6. In addition, "there is no inflexible rule that late payments cannot be ordinary." Quad Sys. Corp., 2003 WL 25947345 at *7. Late payments may be considered ordinary between the parties if the defendant can demonstrate that late payments were ordinarily made and accepted by the parties. Quad Sys. Corp., 2003 WL 25947345 at *7; see also Burtch v. Detroit Forming, Inc. (In re Archway Cookies), 435 B.R. 234, 242 (Bankr. D. Del. 2010)( a pattern of late payments can establish an ordinary course between the parties). Such is the case here. During the short relationship between the parties, Plaintiff never paid any of the invoices it received from Defendant. This fact alone, however, does not preclude Defendant from proving that the transfers were made in the ordinary course of the parties' business relationship. Defendant has come forward with sufficient factual averments of the history of the parties' business relationship to show that delinquent payments were not extraordinary. This satisfies Defendant's burden to show that genuine issues of material fact exist regarding whether the transfers were within the ordinary course of business between the parties.

Although Defendant has shown that genuine issues of material fact preclude Plaintiff from being successful on its Motion on Count I of the complaint, I will also address the objective test in Section 547(c)(2)(B). The relevant issue under the objective test is whether the transfer falls within the scope of what is considered ordinary in the industry. NWL Holding, 2013 WL 2436667, at *7. Defendant maintains that joint check agreements are not uncommon in the industry and points to the fact that Plaintiff admitted that it entered into a joint check agreement with another party several months prior to the joint check agreement at issue herein. Viewing the evidence in the light most favorable to Defendant, as the nonmoving party, I find that Defendant has come forward with sufficient factual averments to show that genuine issues of material fact exist regarding whether the joint check agreement and the transfers thereunder were within the ordinary course of business in the industry. For all of these reasons, Plaintiff's Motion on Count I of the complaint is denied.

## C.  **Plaintiff Is Not Entitled to Summary Judgment on Count IV of Its Complaint Which Seeks To Avoid the Post-Petition Transfers Made Under the Joint Check Agreement as Unauthorized Post-Petition Transfers Under 11 U.S.C. §549(a).**

Plaintiff also seeks summary judgment on Count IV of the complaint, which seeks to avoid, as unauthorized post-petition transfers under 11 U.S.C. §549(a), the two checks that were honored by M&T Bank after Plaintiff filed its Chapter 11 petition. Plaintiff, as the moving party with the burden of proof, must show that no genuine issues of material fact exist and must support its motion with credible evidence of all the essential elements of its case. <u>Polichuk</u>, 2014 WL 766648 at *7. Plaintiff failed to meet this burden because its Motion on this count is based on bald allegations that the post-petition transfers were unauthorized.

Moreover, Defendant maintains that summary judgment is not warranted on this count because the post-petition transfers were in fact authorized by the Order I entered on December 12, 2012, in Plaintiff's main bankruptcy case. That Order granted Plaintiff's motion to honor pre-petition obligations to customers and otherwise continue customer programs in the ordinary course of business. Plaintiff, however, argues that the post-petition transfers were not authorized by the Order. Nothing in the record clearly identifies the parties whom Debtor intended to cover by the December 12, 2012 Order. Viewing the evidence in the light most favorable to Defendant, as the nonmoving party, I find that genuine issues of material fact exist regarding whether the post-petition transfers were unauthorized. I will therefore deny summary judgment in favor of Plaintiff on Count IV.

# D. Plaintiff Is Not Entitled to Summary Judgment on Counts II (Which Seeks Turnover of the Property Transferred), V (Which Seeks Recovery of the Transfers) or VI (Which Seeks Disallowance of Any Claim Defendant Might Have Against the Estate) of the Complaint Because Recovery on Any of These Counts Is Dependent Upon Plaintiff First Prevailing on Counts I or IV.

Plaintiff requests summary judgment on the remaining counts of the complaint. Count II seeks turnover of the property transferred as property of the estate under 11 U.S.C. §542, Count V seeks recovery of the property transferred plus interest under 11 U.S.C. §550 and Count VI requests that any claim asserted by Defendant against the estate be disallowed until Defendant returns the amount of the transfers. Recovery under each of these counts, however, is dependent upon Plaintiff prevailing on either Count I or Count IV of the complaint. Because Plaintiff's request for summary judgment on Counts I and IV is denied, Plaintiff's request for summary judgment on Counts II, V, and VI is premature and must also be denied.

## IV. **CONCLUSION**

For the reasons set forth in this Opinion, I find that genuine issues of material fact exist on the question whether the joint check agreement and the transfers thereunder are avoidable as preferential transfers under 11 U.S.C. §547(b). I will therefore deny Plaintiff's Motion on Count I of the complaint, which seeks to avoid the transfers as preferential transfers under 11 U.S.C. §547(b). I also find that genuine issues of material fact exist regarding whether the post-petition transfers at issue were unauthorized. I will therefore deny Plaintiff's Motion on Count IV of the complaint, which seeks to avoid the transfers as unauthorized post-petition transfers under 11 U.S.C. §549(a). Finally, I will deny Plaintiff's Motion on the remaining counts of the complaint (Counts II, V and VI) because Plaintiff may only prevail on those counts if it prevails on Count I or IV.

I will enter an Order denying Plaintiff's Motion.

BY THE COURT

Date: March 11, 2014

_____
RICHARD E. FEHLING
United States Bankruptcy Judge